Paulik TOUTOUNJIAN, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 96–CV–291C(F).

United States District Court, W.D. New York.

Feb. 12, 1997.

Sacks and Kolken (Robert D. Kolken, of counsel), Buffalo, NY, for Petitioner.

United States Department of Justice, Office of Immigration Litigation (Hugh G. Mullane, of counsel), Washington, DC, for Respondent.

## DECISION AND ORDER

CURTIN, District Judge.

### BACKGROUND

Petitioner, Paulik Toutounjian, petitioned this court for review of the Board of Immigration Appeals' final order of exclusion. He seeks a writ ordering the United States government to allow him to enter as a nonimmigrant for pleasure.

Petitioner is a Syrian citizen and a landed immigrant of Canada. He was granted a visa on June 12, 1989 to come to the United States indefinitely as a nonimmigrant visitor for pleasure. However, upon entering the United States on November 11, 1993, he was served with a Form 1–122, Notice to Applicant For Admission Detained For Hearing Before Immigration Judge. The Notice stated that petitioner would not be admitted because he had committed a crime of sexual assault involving moral turpitude (Item 2, p. 2). Subsequently, an exclusion hearing was held before the immigration court on June 30 and October 30, 1994.

At the hearing, it was discovered that petitioner had two convictions in Canada. The first conviction was for a sexual assault, an offense punishable under Canadian Criminal Code § 271(1)(b). The second conviction was for the willful commission of an indecent act in a public place in the presence of one or more persons, an offense punishable under Canadian Criminal Code § 173(1)(a). Both convictions arose out of the same incident. Counsel for petitioner made an offer of proof before the immigration court that petitioner grabbed a woman on her buttocks on a Montreal street while petitioner was drunk (Item 2, p. 2). Although the government did not dispute these facts before the immigration court, the record of conviction does not specify the facts, and the immigration court's decision made no specific finding of fact. Petitioner's case was handled as a summary conviction in Canada, which is the procedure for handling misdemeanor offenses (Item 2, p. 3). Petitioner was sentenced to two years

probation and two years of suspension for each conviction (Item 1, Ex. 4). The two years of probation was unsupervised (Item 2, p. 3). Furthermore, he was neither fined nor sentenced to any term of imprisonment (*Id.*).

Section 173(1)(a) of the Canadian Criminal Code provides: "1) Every one who wilfully does an indecent act (a) in a public place in the presence of one or more persons, ... is guilty of an offence punishable on summary conviction." MARTIN'S ANNUAL CRIMINAL CODE (1983), attached at Item 4, p. 107

The Immigration and Naturalization Service (INS) conceded that the sexual assault conviction fell under the petty offense exception of the Immigration Act. Thus, only the indecent act conviction was relevant to the issue of whether petitioner was excludable pursuant to INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), for a crime involving moral turpitude.

The immigration judge did not squarely address the issue of whether the petitioner's crime involved moral turpitude. Rather, the immigration judge held that the Canadian statute proscribing the indecent act required a showing of "wilfulness," or intent, and that the cases cited by the petitioner were inapposite because the laws they construed did not require a showing of intent. Item 4, p. 67.

The immigration judge went on to observe that a Canadian court interpreting section 173 held: "In order for the act to be indecent, there must be moral turpitude to some degree." *Toutounjian,* at Item 4, p. 66 (Citing MARTIN'S ANNOTATED CRIMINAL CODE § 173 *R. v. Springer* (1975), 24 C.C.C.(2d) 56, 31 C.R.N.S. 48 (Sask.Dist.Dist.Ct.)). Consequently, the immigration judge held that this interpretation must be adopted, and petitioner's crime found to be one of moral turpitude, "for to hold otherwise would entail disrespect for the judgments of another sovereign, and thus undermine the principle of international comity." *Toutounjian* at Item 4, p. 67.

The Board of Immigration Appeals affirmed the decision of the immigration court without any discussion of moral turpitude. Item 4, p. 3.

## DISCUSSION

### I. Standard of Review

■■■ Final orders of exclusion of an alien may be reviewed only in a habeas corpus proceeding before the district court. *Castillo–Magallon v. I.N.S.,* 729 F.2d 1227 (9th Cir.1984). A district court is not required to conduct a de novo hearing as part of its habeas corpus review of an exclusion order. *De Brown v. Department of Justice,* 18 F.3d 774 (9th Cir.1994). The Board of Immigration Appeal's conclusions of law are reviewed de novo, but its factual findings are given considerable deference. *Si v. Slattery,* 864 F.Supp. 397 (S.D.N.Y.1994). It is well settled that a reviewing court may not reweigh the factors relevant to a discretionary determination by the BIA. *I.N.S. v. Rios–Pineda,* 471 U.S. 444, 452, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985).

■■■ However, when the BIA's decision is fact-sensitive and failure to address relevant factors is of sufficient magnitude, the court may reconsider the merits of the decision. *See Mejia–Carrillo v. United States Immigration and Naturalization Service,* 656 F.2d 520, 522 (9th Cir.1981) (BIA's decision may be reversed only for an abuse of discretion, such as failure to consider all relevant facts).

In discussing the standard of review of the decisions of an unrelated agency the Second Circuit Court of Appeals has held that an agency's conclusions of law are reviewable under a higher standard than that of "abuse of discretion." *H.W. Wilson Co. v. United States Postal Service,* 580 F.2d 33, 37 (2d Cir.1978). In *H.W. Wilson,* the Court of Appeals overturned the decision of the Postal Service that the petitioner's publications were not periodicals. The court held that "when the question is one of law and does not implicate the expertise of the agency, we must provide a stricter standard of review. This is particularly true when, as in the present case, 'the administrator's legal decision is based on his interpretation of a judicial opinion that in turn construes a statute.'" *Id.* (Citations omitted).

This court therefore reviews the legal conclusions of the immigration judge and the BIA de novo.

## II. Petitioner was not necessarily convicted of a crime of moral turpitude.

Throughout its existence, the BIA has defined a crime of moral turpitude as "conduct that shocks the public conscience as being inherently base, vile, or depraved, contrary to the rules of morality and the duties owed between man and men." *Matter of Danesh,* 19 I. & N. Dec. 669, 670 (1988); *Matter of Flores,* 17 I. & N. Dec. 225, 227 (BIA 1980); *Matter of J,* 2 I. & N. Dec. 99 (BIA 1944).

██ In *Matter of P.,* the Board set out the framework for an inquiry into whether a prior conviction was for a crime of moral turpitude:

> In determining whether a crime involves moral turpitude, we are limited in the first instance to an examination of the statute wherein the crime is defined. If the crime as defined does not necessarily of its essence comprehend moral turpitude, then the alien cannot be said to have committed a crime involving moral turpitude. Where, however, the statute is divisible or separable and so drawn as to include within its definition crimes which do and some which do not involve moral turpitude, the record of conviction, i.e., the information (complaint or indictment), plea, verdict and sentence may be examined to ascertain therefrom whether the requisite moral obloquy is present.

*Matter of P.,* 2 I. & N. Dec. 117, 119 (BIA 1944). The framework set out by the Board in that decision has been applied in a number of subsequent cases. Consequently, it is well established that an offense must necessarily involve moral turpitude in order for a conviction for that crime to support an order of exclusion. *Matter of Serna,* Interim Decision 3188 (BIA 1992). Moreover "it is equally clear that any doubts in deciding whether or not the statute proscribed an act involving moral turpitude must be resolved in the alien's favor." *Id.,* (citing *Fong Haw Tan v. Phelan,* 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433 (1948)).

Petitioner was convicted of a violation of Section 173(1)(a) of the Canadian Criminal Code, which states: "1) Every one who wilfully does an indecent act (a) in a public place in the presence of one or more persons ... is guilty of an offence punishable on summary conviction." Martin's Annual Criminal Code (1983), attached at Item 4, p. 107.

The Board has held that the term "wilfully" did not necessarily denote a statutory intent requirement. *In Matter of B,* 2 I. & N. Dec. 867 (BIA 1947), the Board held that the crime of wilfully damaging mailboxes in violation of the Criminal Code of Canada did not involve moral turpitude where the statutory provision did not specifically require base or depraved conduct, and the record of conviction did not show base or depraved conduct. The Board noted that the term wilfully "as contained [in the statute] is defined so broadly that it covers a case of what courts in the United States would regard as gross or wanton negligence."

██ Therefore, the indecency statute does not necessarily involve moral turpitude as that term has been construed by the BIA. For example, in Matter of P, 2 I. & N. Dec. 117, 118 (BIA 1944), the Board found that where the defendant was convicted of contributing to the delinquency of a minor for relieving himself in the presence of a child, the conviction was not a crime of moral turpitude because he could have been convicted even if he had no intent to contribute to the delinquency of a minor. *Id.* At 121. But a person could be convicted under the indecency statute at issue in the present case, under precisely the same circumstances considered in by the BIA in *Matter of P.*

██ This court concludes that the indecency "statute is divisible or separable and so drawn as to include within its definition crimes which do and some which do not involve moral turpitude." *Matter of P.,* 2 I. & N. Dec. at 118–19. Therefore, this court must turn to the record of conviction, "to ascertain therefrom whether the 'requisite moral obloquy' is present." *Id.* Pursuant to 22 C.F.R. § 40.21(a)(1), whether or not the "requisite moral obloquy" is present is determined by "the moral standards generally prevailing in the United States"

But the government took the position at oral argument that the record of conviction contains no facts which specify what, exactly, the petitioner did. Instead, the government argued that this court was bound by the determination of the Canadian court that a conviction under the Canadian indecency statute was necessarily a crime of moral turpitude. Petitioner argued that he made an offer of proof of the underlying facts before the immigration court, which were undisputed by the government. The government pointed out, correctly, that such an offer of proof, even if undisputed, is not a finding of fact by the immigration court.

For the reasons set out below, this court holds that it is not bound by the determination of the Canadian court as to moral turpitude. Therefore, faced with a statute which may or may not describe a crime of moral turpitude, and a record of conviction which does not specify the facts on which petitioner pleaded guilty, this court must resolve all doubts in favor of the petitioner and conclude that he did not plead guilty to a crime of moral turpitude.

### III. This court is not bound by the findings of the Canadian court as to whether the foreign conviction was for a crime of moral turpitude.

The immigration court held that it was bound by the decision of the Saskatchewan district court to conclude that a conviction under section 173 of the Canadian Criminal Code is necessarily a conviction involving moral turpitude. In reaching this conclusion, the Immigration Court relied on the decision of the Second Circuit Court of Appeals in *Chiaramonte v. INS,* 626 F.2d 1093, 1095 (2d Cir.1980). But the *Chiaramonte* decision did not state that comity binds a United States court to all legal interpretations of a foreign court. Rather, *Chiaramonte* held:

[N]either the INS nor the courts may entertain a challenge to the legitimacy of a criminal conviction duly obtained under the laws of a foreign country. To hold otherwise would entail disrespect for the judgments of that sovereign, and thus undermine the principle of international comity. More significantly, such collateral attacks

as a practical matter could not reasonably provide a fair forum for ascertaining the truth of the assertion. The proceeding would be conducted in a different court, in a different country, geographically and temporally far removed from the locus of the crime. Accordingly, both administrative and judicial review of such matters must be confined to the official records of the original proceedings, most particularly, the court's ultimate judgment.

*Id.*

In other words, a United States court should be bound by the factual findings of a foreign court and should not seek to retry a criminal conviction after the fact. But this court finds nothing in *Chiaramonte* which leads to a conclusion that all foreign legal pronouncements are binding on United States courts.

To the contrary, the Code of Federal Regulations provides:

Before a finding of ineligibility under INA 212(a)(2)(A)(I)(I) may be made because of an admission of the commission of acts which constitute the essential elements of a crime involving moral turpitude, it must first be established that the acts constitute a crime under the criminal law of the jurisdiction where they occurred. *A determination that a crime involves moral turpitude shall be based upon the moral standards generally prevailing in the United States.*

22 C.F.R. § 40.21(a)(1) (emphasis added).

Consequently, the court finds that the correct legal standard to be applied is whether petitioner's conduct amounted to moral turpitude based on the relevant rules established by the BIA and United States courts. As the court concluded above, the answer is inconclusive, and inconclusive results are resolved in favor of the petitioner.

### IV. Moral Turpitude Defined by the BIA

This court does not reach the merits of whether the conduct petitioner claims resulted in his conviction amounts to a crime of moral turpitude in the United States. But having examined an exhaustive list of cases

on the subject, the court takes the opportunity to note the broad array of opinions.

BIA cases applying the "vile, depraved or base" standard can be organized in four basic categories. Cases involving homosexual activity are almost invariably found to involve moral turpitude, as are cases involving the sexual or physical abuse of women or children. Simple assault does not involve moral turpitude, unless it results in serious bodily injury. Finally, there are a number of miscellaneous cases involving indecent acts, gambling, perjury, burglary, and other crimes where the findings of moral turpitude vary widely.

Cases involving any hint of homosexual conduct are found to involve moral turpitude, in some cases even where the record of conviction offers *no actual facts of the case.* In *Matter of Z,* 2 I. & N. Dec. 316 (BIA 1945), the Board held that it could not conclude that petitioner was convicted of a crime of moral turpitude in Canada, where the record of petitioner's conviction for "gross indecency" did not specify the act for which he was convicted. But in *Matter of H,* 7 I. & N. Dec. 359, 360–61 (BIA 1956), the petitioner was convicted of homosexual conduct in Canada under a "gross indecency" statute. The BIA was at first "unable to conclude" that petitioner had been convicted of a crime of moral turpitude because the term gross indecency was not defined in the statute and the record of conviction contained no facts. The BIA ultimately reconsidered, and found the conviction to be of moral turpitude, because:

> [A]n examination of reported cases failed to turn up any case wherein a conviction occurred under this section upon facts which would not have involved moral turpitude. Most of the cases circumvented any discussion of the facts involved by referring to them either as too disgusting to mention or as obscene and indecent exhibitions.

*Id.*

In *Babouris v. Esperdy,* 269 F.2d 621, 622–23 (2d Cir.1959), *cert. denied,* 362 U.S. 913, 80 S.Ct. 662, 4 L.Ed.2d 620 (1960), the petitioner was twice convicted of disorderly conduct for soliciting male sex partners. The Court held rather conclusorily that the crimes involved moral turpitude because other courts had construed them that way. The strong distaste for homosexual conduct was expressed most forcefully in *Matter of S,* 8 I. & N. Dec. 409 (BIA 1959). In that case, the Board found that homosexuals were "afflicted with psychopathic personalities."

Similarly, sexual or physical abuse of women or children has been almost uniformly found to involve a crime of moral turpitude. In *Matter of Phong Nguyen Tran,* Interim Decision 3271 (BIA 1996), causing corporal injury to a spouse was found to involve moral turpitude. According to the Board, "inflicting bodily harm upon a person with whom one has such a familial relationship is an act of depravity which is contrary to accepted moral standards." *Id.* In a similar case, conviction of inflicting traumatic corporal injury on a child was found to be a crime of moral turpitude. *Matter of Nodahl,* 12 I. & N. Dec. 538 (1967). In *Matter of P,* 5 I. & N. 392 (BIA 1953), a conviction for having sex with a 16–year-old girl was found to be a crime of moral turpitude. In *Matter of Farinas,* 12 I. & N. Dec. 467, 473, the Board held that a Washington State conviction for abduction of a female under 18 for purposes of sex or marriage without her parents' consent was a crime of moral turpitude because it was vile, depraved, base and "repugnant to normal moral standards."

The crime of assault includes a broad spectrum of misconduct, ranging from relatively minor offenses, e.g., simple assault, to serious offenses, e.g., assault with a deadly weapon. The BIA has held that assault may or may not involve moral turpitude. *Matter of Danesh,* 19 I. & N. Dec. 669, 670 (BIA 1988). Simple assault is not considered to be a crime involving moral turpitude. *Matter of Short,* 20 I. & N. Dec. 136, 139 (BIA 1989). However, assault with a deadly weapon has been held to be a crime involving moral turpitude. *Matter of Medina,* 15 I. & N. Dec. 611 (BIA 1976), *affd. sub nom. Medina–Luna v. INS,* 547 F.2d 1171 (7th Cir. 1977). In *Matter of Perez–Contreras,* Interim Dec. 3194 (BIA 1992), the BIA held that assault in the third degree under the relevant state statute did not constitute a crime involving moral turpitude. The statute gov-

erning the conviction identified misconduct which simply caused bodily injury, rather than serious bodily injury. Moreover, the misconduct did not involve the use of a weapon. In contrast, in *Matter of Danesh*, the BIA held that the fact that the assault was on a peace officer was a key element in establishing a crime involving moral turpitude. In the area of assault, crimes involving moral turpitude ordinarily include an aggravating dimension. *Matter of Fualauu*, Interim Decision 3285 (BIA 1996). Concerning a case of third-degree assault, the *Fuluauu* decision held:

> The offense at issue here is fundamentally different from those that have been determined to involve moral turpitude. The instant assault conviction does not arise under a statute which has as an element "the death of another person," *Matter of Franklin*, [20 I. & N. Dec. 867, 868 (BIA 1994), *aff'd*, 72 F.3d 571 (8th Cir.1995) ]; the use of a deadly weapon, *Matter of Medina, supra;* or any other aggravating circumstance, *Matter of Danesh*, supra. Therefore, we find the crime at issue here is similar to a simple assault. *Matter of Short, supra; Matter of Baker, supra*.

> We have held that an analysis of an alien's intent is critical to a determination regarding moral turpitude. *Matter of Serna*, 20 I. & N. Dec. 579 (BIA 1992). Although the Board has issued precedents holding that a conviction involving reckless conduct, such as appears in the applicable Hawaii statute, may form the basis for a determination that a crime involves moral turpitude, we have never held that a crime involving reckless conduct is per se a crime involving moral turpitude. *See Matter of Franklin, supra; Matter of Wojtkow*, 18 I. & N. Dec. 111 (BIA 1981); *Matter of Medina, supra*. In order for an assault of the nature at issue in this case to be deemed a crime involving moral turpitude, the element of a reckless state of mind must be coupled with an offense involving the infliction of serious bodily injury. *See, e.g., Matter of Medina, supra see also Grageda v. INS, supra*. Here, where the violation at issue is similar to a simple assault, we find that the respondent did not commit a

crime involving moral turpitude notwithstanding the state court's finding that he acted with a reckless state of mind.

*Id.*

Among the vexing collection of miscellaneous cases are the two principal cases cited by the petitioner before the immigration court. *In Matter of Mueller*, 11 I. & N. Dec. 268 (BIA 1965), the petitioner was convicted of "lewd and lascivious conduct by unlawfully, publicly and indecently exposing his sex organ" in violation of a Wisconsin statute. The BIA found that:

> The acts defined as public welfare offenses are usually not *malum in se* but are wrong merely because they are prohibited by statute.

> ... Moral turpitude is dependent upon the depraved or vicious motive of the alien. It is in the intent that moral turpitude inheres. A crime, committed without contemplating death, without malice, and without intent, and ordinarily committed while engaged in a lawful act but committed through carelessness or because of the absence of due caution or circumspection does not include an evil intent and therefore does not involve moral turpitude.

> The crime under consideration, section 942.20(2), Wisconsin Statutes, does not require a specific intent and it does not appear that it is essential that the defendant have a vicious motive or corrupt mind. All that appears to be necessary for conviction under the statute is that the act be done consciously. There is nothing in the complaint indicating the circumstances under which the indecent exposure was made. The special inquiry officer has stated that a person who does the forbidden act through physical necessity could be convicted under the statute, even though he had no lewd or lascivious intent.

In *Matter of H—*, 7 I. & N. Dec. 301 (BIA 1956), also cited by petitioner before the immigration court, the alien was convicted of indecent exposure. According to the information, the petitioner exposed himself at a playground in the presence of a 5–year–old girl. The BIA held that the offense was "not an act of baseness, vileness or depravity" and

based this conclusion on the fact that a person could be convicted under the relevant indecent exposure statute "even though he acted through negligent disregard of the presence of another person and the exposure was occasioned by physical necessity."

Other miscellaneous cases offer still more varied results. In *Matter of Katsanis,* 14 I. & N. Dec. Dec. 266, 268–69 (BIA 1973), the Board found that petitioner's conviction for passing a bad check in Greece was a crime of moral turpitude under Greek law, because there was a requisite finding of intent. The court went on to conclude that since passing a bad check was a crime of moral turpitude, attempting to pass a bad check also fell under that definition. In *Matter of D,* 4 I. & N. Dec. 149, 153 (BIA 1960), petitioner was a Canadian woman convicted of attempted suicide under Canadian law. The Board observed that United States jurisdictions were divided as to whether suicide was a crime. Ultimately, the court concluded that contemporary United States public opinion did not consider suicide a crime, and that therefore petitioner should not be excluded. Although burglary is generally considered to be a crime of moral turpitude, see *Phong Nguyen Tran,* Interim Decision 3271 (BIA 1996), that conclusion is not uniform. In *Matter of M,* 2 I. & N. Dec. 721, 723 (BIA 1946) the Board held that burglary was not a crime of moral turpitude, finding that "[t]here is nothing inherently immoral, base, or depraved in unlawfully breaking and entering in the state of New York when viewed in the light of the definition of those terms as set forth in [N.Y. Penal Law]." *Id.* The Board held in that case that it is the crime accompanying the breaking and entering which determines moral turpitude.

Examining this body of cases in its entirety, this court sets aside all those cases involving homosexual conduct and the sexual and physical abuse of women and children. The cases involving homosexual conduct are clearly inapposite due both to society's traditional unease about homosexuality, and the time during which many of these cases were decided. The physical and sexual abuse cases are not applicable because petitioner in the present case did no physical harm to the victim, and engaged in no conduct even arguably approaching the invasiveness of sexual intercourse.

The court also sets aside the two indecent exposure cases, *Matter of Mueller* and *Matter of H,* cited above and considered by the immigration court. These cases are inapposite because the BIA found that a person could be convicted under the statutes at issue even if he believed his conduct to be lawful, and the violation was a result of carelessness. Although petitioner's conduct might have been reckless, as opposed to strictly intentional, it is impossible to believe that he thought, or could have thought, that his conduct was lawful.

Most applicable, therefore, are the body of cases concerning assault. As in Fualauu, petitioner's conviction for indecency does not arise under a statute which has as an element "the death of another person," or use of a deadly weapon. There is an aggravating circumstance in that the petitioner touched a woman's buttocks. The crime at issue here is similar to a simple assault, with the added element of the intimate touching.

 Although intent is not the single dispositive factor, the BIA has held that an analysis of an alien's intent is critical to a determination regarding moral turpitude. *Matter of Serna,* 20 I. & N. Dec. 579 (BIA 1992). "Wilful" conduct does not necessarily denote a statutory intent requirement, where the statutory provision did not specifically require base or depraved conduct, and the record of conviction did not show base or depraved conduct. *Matter of B,* 2 I. & N. Dec. 867 (BIA 1947). As noted, the Board in that case found that the term wilfully "as contained [in the statute] is defined so broadly that it covers a case of what courts in the United States would regard as gross or wanton negligence."

Similarly, there is evidence in the present case that the term "wilfully" in section 173 could encompass negligent conduct. The strongest evidence is the fact that it is a valid defense under the statute to claim that the conduct was a joke. According to Canadian cases construing the indecency statute, "[i]n order for the act to be indecent, there must be moral turpitude in some degree. An ac-

cused who, as a joke, ran through a football stadium while naked was acquitted of a charge under this section." *R. Springer* (1975), 24 C.C.C. (2d) 56, 31 C.R.N.S. 48 (Sask.Dist.Ct.), *digested in* MARTIN'S ANNUAL CRIMINAL CODE § 173, p. CC/233–34 (1983). In another case "the accused was acquitted where he briefly exposed his bare buttocks in an attempt to be humorous." *R. v. Heckler,* (1980), 58 C.C.C. (2d) 66 (Y.Terr.Ct.), *digested in* MARTIN'S ANNUAL CRIMINAL CODE § 173, p. CC/233–34 (1983). These acquittals caused the editors of MARTIN'S to conclude that "[i]t has been held, in some cases, that if the accused's acts were only intended as a joke, the requisite criminal intent was not made out." *Id.* The digested *R. Springer* decision was cited by the immigration judge for the proposition that "[i]n order for the act to be indecent there must be moral turpitude in some degree." *Toutounjian,* Item 4, p. 67 (citing *R. Springer* (1975), 24 C.C.C. (2d) 56, 31 C.R.N.S. 48 (Sask.Dist.Ct.), MARTIN'S ANNUAL CRIMINAL CODE § 173).

It is difficult to divine the precise application of the Canadian "joke defense." But if the term "wilfully" denoted a requirement of specific intent to engage in indecent behavior, and facts satisfying that requirement were present, the fact that the conduct was a joke would not likely be a defense.

This court therefore assumes that the conduct allegedly at issue in this case is more analogous to reckless behavior. To find moral turpitude, the element of a reckless state of mind must be coupled with an offense involving the infliction of serious bodily injury. *Matter of Fualaau,* Interim Decision 3285 (BIA 1996).

In the present case, petitioner displayed, at least arguably, a reckless as opposed to an intentional state of mind. Petitioner claims he was drunk at the time of the incident. There is no evidence of any specific intent to engage in indecent conduct, as opposed to a reckless act in touching the woman's buttocks. Moreover, although touching a women's buttocks is an aggravating element, there does not appear to be any claim that the petitioner did physical harm to the victim. Applying the cited standards, this court

concludes that while no woman should be touched on her buttocks on a public street, and such conduct merits misdemeanor criminal charges, it does not sink to the level of "depravity" or "vileness" and therefore does not fit the BIA's own definition of moral turpitude. Consequently, were the court to apply the cited body of cases to the facts petitioner claims resulted in his conviction, the court would conclude that petitioner was not convicted of a crime of moral turpitude.

## CONCLUSION

For the reasons stated above, the decision of the Board of Immigration Appeals is reversed. The Immigration and Naturalization Service is ordered to process petitioner's visa application in a manner consistent with this court's determination that petitioner was not convicted of a crime of moral turpitude.

Having concluded that petitioner was not convicted of a crime of moral turpitude, this court does not reach the question of whether the petty offense exception applies.

So ordered.