Paulik TOUTOUNJIAN, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 96–CV–291C(F).

United States District Court,
W.D. New York.

April 17, 1998.

Sacks and Kolken, Buffalo, NY (Robert D. Kolken, of counsel), for Petitioner.

United States Department of Justice, Office of Immigration Litigation, Washington, DC (Hugh G. Mullane, of counsel), for Respondent.

DECISION and ORDER

CURTIN, District Judge.

## BACKGROUND

Currently pending is petitioner Paulik Toutounjian's motion for attorneys' fees and costs (Item 22). Petitioner filed a petition for writ of habeas corpus with this court on May 1, 1996, after both an immigration judge and the Board of Immigration of Appeals ("BIA") concluded that petitioner was excludable from the United States because of his criminal convictions in Canada. On February 12, 1997, this court reversed the BIA's decision and ordered the Immigration and Naturalization Service ("INS") to process petitioner's visa application in a manner consistent with the court's determination that petitioner was not convicted of a crime of moral turpitude. *Toutounjian v. INS,* 959 F.Supp. 598, 606 (W.D.N.Y.1997). The INS filed a motion pursuant to Fed.R.Civ.P. 59(e) requesting the court to reconsider its decision or, in the alternative, to remand the case to the BIA. On May 7, 1997, the court denied the INS's motion for reconsideration (Item 21). The judgment of this court became final on July 7, 1997, since the INS did not file a notice of appeal by that date.

Petitioner argues that he is entitled to attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). The EAJA permits a court to award fees and costs to a prevailing party in a litigation against the United States or one of its agencies when the court finds that the government's position was not substantially justified.[1] The INS opposes petitioner's motion arguing that (1) EAJA fees are not available in habeas corpus proceedings, (2) the BIA's decision was substantially justified, (3) the government's Rule 59(e) motion was substantially justified, (4) the fee application is not supported by contemporaneous time records, and (5) the hourly rate requested is excessive (Item 25).

## DISCUSSION

### I. *Awards of Attorneys' Fees in Habeas Corpus Proceedings*

The INS contends that EAJA fees are not available in habeas corpus proceedings .(Item 25, pp. 4–6). Citing the Tenth Circuit's decision in *Ewing v. Rodgers,* 826 F.2d 967, 969 (10th Cir.1987), the INS argues that because the EAJA does not provide a general definition of the term "civil action" and because the EAJA is a waiver of sovereign immunity and must therefore be construed strictly, Congress's failure to define the term "civil action" makes application of the statute ambiguous when traditional habeas corpus actions are involved (Item 25, p. 4). The INS notes that in *Boudin v. Thomas,* 732 F.2d 1107, 1112–14 (2d Cir.1984), *reh'g en banc denied,* 737 F.2d 261 (1984), the Second Circuit held that habeas petitions are not "civil actions" under the EAJA, explaining that EAJA benefits are unnecessary for habeas corpus petitioners because they "are dedicated to vindicating individual rights ... rather than refining rules and policy." *Id.,* at 1114. The court reasoned "that Congress either meant to exclude habeas petitions from the scope of section 2412 or overlooked the question." *Id.* The INS argues that because the instant case was initiated by a petition for a writ of habeas corpus, it is controlled by *Boudin.*

Petitioner asserts that attorneys' fees have routinely been awarded in cases involving review of INS decisions (Item 27, p. 1). Petitioner argues that Boudin is not applicable to the present case because *Boudin* involved a prisoner's challenge to the conditions of confinement rather than a review of an agency's decision (*Id.,* p. 2). Petitioner notes that a petition for habeas corpus is the statutorily mandated procedural vehicle to obtain judicial review (*Id.*). Petitioner cites several

---

1. The statute provides, in relevant part:
   Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
   28 U.S.C. § 2412(d)(1)(A).

cases from this circuit and others where courts applied the EAJA to petitions challenging immigration orders (*Id,* pp. 2–3).

Petitioner is correct that *Boudin* does not apply to the instant case and that attorneys' fees are available for habeas corpus proceedings requesting judicial review of INS decisions. As petitioner points out, in *Petition of Hill,* 775 F.2d 1037 (9th Cir.1985), the Ninth Circuit held that an alien who successfully challenged an order of exclusion issued against him on the basis of his unsolicited admission that he was a homosexual was entitled to counsel fees as provided by the EAJA. The court explained that although the Second Circuit in *Boudin* had spoken broadly of habeas corpus proceedings, the Second Circuit was concerned with habeas corpus proceedings in the criminal context when it held that EAJA fees were not available. *Petition of Hill,* 775 F.2d at 1040. The Ninth Circuit noted that

> [t]he denial of attorneys' fees in *Boudin* was premised on the court's understanding of the dual purposes of the EAJA: to remove the financial disincentive for individuals and small businesses challenging or defending against government regulatory conduct where the cost of attorneys may be prohibitive, and to encourage challenges to improper government action as a means of helping to formulate better public policy. The *Boudin* court held that those interests were not served in the prisoner's habeas corpus proceedings in that case.

*Id.* The court then looked at the substance of the remedy sought, rather than the label attached to the claim, and found that the petitioner's "claim was not merely the vindication of his own personal rights, but a challenge to a regulatory policy that had a sweeping effect on homosexual aliens seeking to enter the United States." *Id.,* p. 1041. The court also noted that the petitioner, a nonresident alien, was (1) not eligible for government-provided counsel, (2) had little economic incentive to challenge the INS's action, and (3) had no custodial incentive to reverse the action. *Id.,* p. 1041. The Ninth Circuit has reiterated its position that the EAJA applies to habeas corpus proceedings seeking review of INS decisions in *Diaz–*

*Magana v. Rogers,* 81 F.3d 167 (9th Cir.1996) (table; text in Westlaw at 1996 WL 131801, at *1). In *Diaz–Magana,* the court stated that "even the Second Circuit does not apply its *Boudin* decision to immigration cases." *Id.* (citing *Sotelo–Aquije v. Slattery,* 62 F.3d 54 (2d Cir.1995)).

The Second Circuit has not addressed the question of whether its *Boudin* decision applies to habeas corpus petitions challenging INS decisions. In *Sotelo–Aquije,* 62 F.3d at 54, the Second Circuit held that an alien who had brought a petition for a writ of habeas corpus to challenge the BIA's decision to deny the alien asylum was entitled to attorney's fees and costs under the EAJA. The court did not show any concern that the alien's successful challenge was brought by a habeas corpus petition, nor did it mention *Boudin.* The INS contends that because the *Sotelo–Aquije* court did not address *Boudin,* *Sotelo–Aquije* does not control this jurisdiction issue (Item 25, p. 5, n. 1). The INS correctly points out that the Supreme Court has held that "the existence of unaddressed jurisdictional defects has no precedential effect." *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 2180 n. 2, 135 L.Ed.2d 606 (1996) (citing *Federal Election Comm'n v. NRA Political Victory Fund,* 513 U.S. 88, 97, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994)).

This court finds the Ninth Circuit's analysis in *Petition of Hill* and *Diaz–Magana* to be persuasive. The *Boudin* court expressly recognized that the EAJA was passed partly to encourage challenges of improper actions by government agencies, and that "[a]n adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and the fairness of the law." *Boudin,* 732 F.2d 1107, 1114 (quoting H.R.Rep. No. 1418, 96th Cong., 1st. Sess. 10, *reprinted in* 1980 USCAAN 4984, 4988–89). A habeas petition brought by a prisoner challenging prison conditions does not achieve these goals. A habeas petition brought by an alien who has been denied entry into the United States through an agency regulation or an agency's interpretation and application of a regulation or other governing law most certainly achieves these goals. Petitioner's claim not only served to

vindicate his personal right to enter the United States, it also clarified the correct legal standard for determining whether an alien's prior conviction was for a crime of moral turpitude, thereby affecting all aliens who have committed crimes in other countries and seek entry into the United States. As the Ninth Circuit explained in *Petition of Hill,* the facts that petitioner, as a nonresident alien, was not eligible for government-provided counsel, had little economic incentive to challenge the INS's action, and had no custodial incentive to reverse the action further support the finding that the EAJA should apply to this form of habeas petition.

## II. *The Propriety of Attorneys' Fees—Was the INS's Position Substantially Justified?*

■ The EAJA permits parties who successfully challenge the actions of federal officials in the courts to recover the costs of litigation when "the position of the United States" was not "substantially justified" and where "special circumstances" do not render such an award "unjust." 28 U.S.C. § 2412(d)(1)(A). "With respect to administrative actions, the term 'position of the United States' includes the government's litigating position as well as the position taken by the administrative agency on the merits." *Sotelo–Aquije,* 62 F.3d at 57 (citing 28 U.S.C. § 2412(d)(2)(D)). "To prove that its position was 'substantially justified,' the government bears the burden of showing that its position had a 'reasonable basis in both law and fact.'" *Sotelo–Aquije,* 62 F.3d at 57 (quoting *Federal Election Commission v. Political Contributions Data, Inc.,* 995 F.2d 383, 386 (2d Cir.1993), *cert. denied,* 510 U.S. 1116, 114 S.Ct. 1064, 127 L.Ed.2d 384 (1994) (citing *Pierce v. Underwood,* 487 U.S. 552, 566 & n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988))). The government's position may prove to be legally incorrect and yet remain substantially justified. *Pierce,* 487 U.S. at 566 n. 2 ("a position can be justified even though it is not correct, and we believe it can be substantially (*i.e.,* for the most part) justified if a reasonable person could think it correct . . ."); *Evans v. Sullivan,* 928 F.2d 109, 110 (4th Cir. 1991) ("It would be a war with life's realities to reason that the position of every loser in a lawsuit upon final conclusion was unjustified.").

■ Petitioner contends that the INS's position that it was obligated to apply Canadian law in determining whether petitioner's prior crimes involved moral turpitude lacked a reasonable basis in law or fact. Petitioner argues that where a governmental agency advances a position that fails to follow both law and precedent binding upon it, such a position lacks a reasonable basis. Further, petitioner asserts that the INS was unjustified in asking the court to amend its order and to remand the proceedings to the administrative level (Item 23, pp. 3–4; Item 27, pp. 4–7).

The INS contends that the BIA's finding that petitioner was excludable based on his prior convictions was substantially justified in light of the Second Circuit's decision in *Chiaramonte v. INS,* 626 F.2d 1093 (2d Cir. 1980) (Item 25, pp. 6–10). The INS explains that the BIA relied on the emphasis the Second Circuit placed on deferring to criminal convictions from foreign countries as well as the court's prohibition on collateral attacks (Item 25, p. 7, citing *Chiaramonte,* 626 F.2d at 1098). The INS notes that petitioner never cited or distinguished the *Chiaramonte* decision for either the BIA or this court, nor did he cite or rely upon 22 C.F.R. § 40.21(a)(1), as the court did. Accordingly, the INS contends that where the BIA's decision was premised upon a decision from the Second Circuit and petitioner provided no rationale for departing from this precedent and provided no citation to other controlling authority, the BIA's decision was substantially justified (Item 25, pp. 8–9). The INS also points out that the Second Circuit has suggested that an award under the EAJA is not appropriate unless the government's position is "devoid of legal or factual support" (*Id.,* p. 3, citing *Kirkland v. Railroad Retirement Bd.,* 706 F.2d 99, 105 (2d Cir.1983)).

Upon careful review of the history of this case, this court finds that the INS's position that it was bound by the determination of the Canadian court as to moral turpitude was substantially justified. The parties, the immigration judge, the BIA, and this court had

very limited authority upon which to rely. Despite petitioner's claims to the contrary, there was no clear precedent on the question of whether U.S. law or foreign law provided the proper standard for analyzing moral turpitude. The *Chiaramonte* decision was not clear on this point. This court considered the BIA's analysis and determined that in light of 22 C.F.R. § 40.21(a)(1), the proper standard for analyzing moral turpitude turns upon "the relevant rules established by the BIA and the United States courts." *Toutounjian*, 959 F.Supp. at 602. The court thereby refined the analysis in *Chiaramonte*. Although the court explained that "the *Chiaramonte* decision did not state that comity binds a United States court to all legal interpretations of a foreign court," *id.*, this court did not indicate that the INS's reliance on *Chiaramonte* was misguided or that its interpretation was devoid of factual or legal support. As the INS correctly points out, petitioner's counsel did not cite or attempt to distinguish *Chiaramonte*, nor did he cite or rely upon 22 C.F.R. § 40.21(a)(1). Not having suggested or even considered the analysis the court ultimately selected, it is difficult to understand how petitioner can now argue that that analysis was patently correct at the time the BIA rendered its decision and that the BIA's analysis, and the INS's subsequent position before this court, lacked a reasonable basis in law and fact.

■ The INS was also substantially justified in bringing its Rule 59(e) motion. The INS was not seeking a second opportunity to advance the same arguments, nor was it advancing arguments that necessarily should have been raised before the court entered judgment. The INS's arguments supporting its motion involved issues and questions that it believed were raised and left unanswered by the court's initial decision. First, the INS argued that petitioner's conviction for committing an indecent act in public was a crime of moral turpitude under United States law because his concession pertained to United States law (Item 17, pp. 1–4; Item 25, pp. 10–11). The court's initial decision did not explicitly indicate whether petitioner's concession pertained to United States law. Upon the INS's motion, the court directly addressed this question, and concluded that

petitioner's concession was limited to Canadian law (Item 21, pp. 3–4). Second, the INS requested that the case be remanded to the BIA. This request was not improper in light of Supreme Court authority; nevertheless, the court determined that because the court did not have to examine the facts of petitioner's case to apply the moral turpitude standard, there was no reason to remand the case (*Id.*, p. 5).

Because the court finds that the INS's position was substantially justified, the court need not consider the merits of whether the fee application is supported by sufficient information or whether the hourly rate requested by petitioner's attorneys is excessive.

### CONCLUSION

For the foregoing reasons, this court denies petitioner's motion for attorneys' fees and costs pursuant to the EAJA (Item 22).

So ordered.