## MATTER OF DANESH

### In Deportation Proceedings

### A-23240808

*Decided by Board June 20, 1988*

An aggravated assault against a peace officer, which results in bodily harm to the victim and which involves knowledge by the offender that his force is directed to an officer who is performing an official duty, constitutes a crime involving moral turpitude. *Matter of B-,* 5 I&N Dec. 538 (BIA 1953), modified.

CHARGE:

Order: Act of 1952—Sec. 241(a)(1) [8 U.S.C. § 1251(a)(1)]— Excludable at entry under section 212(a)(9) [8 U.S.C. § 1182(a)(9)]—Crime involving moral turpitude

ON BEHALF OF RESPONDENT:
Robert G. Margolis, Esquire
8035 East R.L. Thornton, Suite 514
Dallas, Texas 75228

ON BEHALF OF SERVICE:
Sue Ying Leong
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated February 21, 1984, the immigration judge found the respondent deportable as charged, declined to accept applications for suspension of deportation and a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1982), and ordered him deported from the United States. The respondent has appealed from that decision. The appeal will be dismissed.

The respondent is a native and citizen of Iran who last entered the United States on September 25, 1983, as a nonimmigrant student. The record reflects that he was convicted in the 16th Judicial District Court of Denton County, Texas, on January 27, 1981, of aggravated assault on a peace officer. The imposition of his 2-year prison sentence was suspended and he was placed on probation.

At the deportation hearing, the Immigration and Naturalization Service introduced the respondent's conviction record into evidence

without objection from counsel. However, the respondent claimed that he was not guilty of the alleged criminal activity and argued that, in any case, his offense did not constitute a crime involving moral turpitude. The immigration judge rejected these contentions and found that the respondent was deportable and ineligible for voluntary departure as a result of his conviction.

On appeal, the respondent has reiterated his arguments that he is innocent and that his crime is not one involving moral turpitude. As the immigration judge noted, the law is well established that in deportation proceedings the immigration judge cannot go behind the judicial record to determine the guilt or innocence of an alien. *See Matter of Khalik,* 17 I&N Dec. 518 (BIA 1980); *Matter of McNaughton,* 16 I&N Dec. 569 (BIA 1978); *Matter of Fortis,* 14 I&N Dec. 576 (BIA 1974). We therefore reject the respondent's contentions regarding his innocence of the alleged assault.

We further find that the crime of which the respondent was convicted is one which involves moral turpitude. Moral turpitude is a nebulous concept, which refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, contrary to the rules of morality and the duties owed between man and man, either one's fellow man or society in general. *See Matter of Flores,* 17 I&N Dec. 225 (BIA 1980); *Matter of McNaughton, supra; Matter of Baker,* 15 I&N Dec. 50 (BIA 1974); *Matter of S–,* 2 I&N Dec. 353 (BIA, A.G. 1945); *Matter of G–,* 1 I&N Dec. 73 (BIA, A.G. 1941). Assault has been said to be an offense that may or may not involve moral turpitude, depending on the circumstances of the particular case. *Ciambelli ex rel. Maranci v. Johnson,* 12 F.2d 465 (D. Mass. 1926).

In this case the respondent was charged with aggravated assault as having knowingly and intentionally caused bodily injury to a peace officer who was in the lawful discharge of his official duty when the respondent knew the person assaulted was a peace officer.[1] A review of our decisions dealing with assault on a peace officer reveals that we have not previously determined whether an offense of this precise nature involves moral turpitude. In *Matter of*

---

[1] Although the record does not state the specific statute that the respondent was charged with violating, it appears clear that the statute involved was section 22.02(a)(2)(A) of the Texas Penal Code Annotated, which provides as follows:

*Aggravated Assault.* (a) A person commits an offense if he commits assault as defined in Section 22.01 of this code and he:

(2) causes bodily injury to a peace officer when he knows or has been informed the person assaulted is a peace officer:

(A) while the peace officer is lawfully discharging an official duty. . . .

Tex. Penal Code Ann. § 22.02(a)(2)(A) (Vernon 1979).

*Logan*, 17 I&N Dec. 367 (BIA 1980), the crime of interference with a law enforcement officer, which was deemed to be analogous to assault, was held to involve moral turpitude because physical force was employed, in that case by the use of a knife. It was noted there that assault with a deadly weapon has generally been considered to be a crime involving moral turpitude. *See also Matter of Medina*, 15 I&N Dec. 611 (BIA 1976); *Matter of Ptasi*, 12 I&N Dec. 790 (BIA 1968); *Matter of G-R-*, 2 I&N Dec. 733 (BIA 1946; A.G. 1947). In *Matter of Baker, supra*, we examined a statute containing five offenses categorized as third degree assault, one of which involved assault on a peace officer with a weapon of any kind.[2] We held that this constituted a crime involving moral turpitude because the use of a weapon was an essential element of the offense.

The alien in *Matter of B-*, 5 I&N Dec. 538 (BIA 1953), was charged with assaulting a prison guard whom he knew to be in the discharge of his lawful duties. We concluded that the offense charged appeared only to have been a simple assault, which is not generally considered a crime involving moral turpitude. Relying on *Ciambelli ex rel. Maranci* v. *Johnson, supra*, we also found that moral turpitude was not involved because there was no weapon used in the commission of the assault. In *Ciambelli* it was determined that, despite the fact that the alien was armed with a razor, moral turpitude was not involved because there was no charge that the assault was made with the weapon. In reaching that conclusion the court relied heavily on the alien's claim that he was only caught in the middle of a fight at a restaurant when an officer rushed in and was struck by another person. However, it was further noted by the *Ciambelli* court that if one "deliberately assaulted an officer of the law with a dangerous weapon and with felonious intent, or for the purpose of interfering with the officer in the performance of his duty, the attendant circumstances showing an

---

[2] The statute involved in *Matter of Baker, supra*, provided that a person who commits any of the following offenses is guilty of assault in the third degree:

(1) assaults another person with intent to commit a felony;

(2) assaults another with a deadly weapon;

(3) assaults another with premeditated design and by use of means calculated to inflict great bodily harm;

(4) assaults another and inflicts serious bodily injury upon the person assaulted; or . . .

(5) assaults a peace officer in the lawful discharge of the duties of his office with a weapon of any kind, if it was known or declared to the defendant that the person assaulted was a peace officer discharging an official duty. . . .

We determined that each of these offenses was considered to be a crime involving moral turpitude.

inclination toward lawlessness, the act might well be considered as one involving moral turpitude." *Id.* at 466.

Finally, in *Matter of O-,* 4 I&N Dec. 301 (C.O., BIA 1951), we examined an offense under German law involving an assault on a police officer by a participant in a public riotous gathering. It was determined that the statute under consideration required no knowledge on the part of the accused that the person assaulted was a police officer engaged in the performance of his duties and, therefore, it could not be deemed to involve moral turpitude. In that decision we also discussed a similar unpublished case in which we had concluded that moral turpitude was not involved, noting that there was "nothing in the record to show that the arresting officer was assaulted or that *he suffered any bodily injury*" during the arrest of the alien. *Id.* at 311 (quoting *Matter of S-,* A7 476 137 (September 15, 1950)) (emphasis added). It was acknowledged in *Matter of O-, supra,* that an inference could be drawn from the unpublished case that an assault by force or violence on an arresting officer, as distinguished from a passive resistance to arrest, would involve moral turpitude.

We find from our review of the decisions referred to above that each is distinguishable from the situation before us and, therefore, none is controlling. Although the crime in *Matter of O-, supra,* was found not to involve moral turpitude, there is a strong inference that our conclusion would have been to the contrary if the statute violated had required knowledge by the accused that he was assaulting a police officer engaged in the performance of his duties. Moreover, the comments made regarding the unpublished decision discussed there indicate our belief that other factors that should be considered in determining if moral turpitude is involved in an assault are whether force and violence have been employed and whether the victim has suffered bodily injury.

*Matter of B-, supra,* differs from the instant case in that the assault there on a prison guard was deemed to be only a simple assault, and no bodily injury to the victim was alleged. Furthermore, we now find that decision to be in error since it was based on the faulty premise that an aggravated assault can only involve moral turpitude if a deadly weapon is used. As authority for that position, citation was made to *United States ex rel. Zaffarano v. Corsi,* 63 F.2d 757 (2d Cir. 1933). A review of that case reveals that the court stated only that assault with a dangerous weapon was conceded to be a crime involving moral turpitude. There is no support in the opinion for the converse proposition asserted in *Matter of B-, supra.* Furthermore, as noted in our discussion of *Matter of Baker, supra,* other assaults of an aggravated nature that do not involve

the use of a deadly weapon have been deemed to be morally turpitudinous. We therefore conclude that *Matter of B–, supra,* is incorrect insofar as it stands for the proposition that an aggravated assault only involves moral turpitude if a deadly or dangerous weapon is used. To the extent that *Matter of B–, supra,* relies on this erroneous assertion, it is hereby modified.

We also find that the cases relied on in *Matter of B–, supra,* are distinguishable from the facts before us in that the courts in both *Ciambelli ex rel. Maranci* v. *Johnson, supra,* and *United States ex rel. Zaffarano* v. *Corsi, supra,* noted strongly the lack of force or violence employed in the offenses alleged, which apparently did not result in any bodily harm to the assaulted peace officers. Moreover, in *Ciambelli* it was indicated that a deliberate assault for the purpose of interfering with the performance of an officer's official duties might be considered as one involving moral turpitude since it evidences an inclination toward lawlessness.

In the case before us the respondent was convicted of aggravated assault on a peace officer. Under Texas law that offense requires that the following elements be present: (1) the person assaulted must sustain bodily injury; (2) the accused must know that the person assaulted is a peace officer; and (3) the peace officer must be engaged in the lawful discharge of an official duty. The fact that bodily injury is an essential element indicates that sufficient force must have been employed to cause harm to the victim's person. The offense is therefore properly deemed to be more serious than a simple assault. Furthermore, the requirements that there be knowledge of the assaulted person's status as a peace officer and that the officer be discharging an official duty establish that the accused has used violence to intentionally interfere with the lawful functions of a peace officer. Such conduct exhibits a deliberate disregard for the law, which we consider to be a violation of the accepted rules of morality and the duties owed to society. *See generally Matter of Flores, supra.* Consequently, we conclude that an aggravated assault against a peace officer, which results in bodily harm to the victim and which involves knowledge by the offender that his force is directed to an officer who is performing an official duty, constitutes a crime that involves moral turpitude. The record clearly establishes that the respondent was convicted of such an offense. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.