# In re Renato Wilhemy SANUDO, Respondent

File A92 886 946 - San Diego

*Decided August 1, 2006*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An alien's conviction for domestic battery in violation of sections 242 and 243(e)(1) of the California Penal Code does not qualify categorically as a conviction for a "crime involving moral turpitude" within the meaning of section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii) (2000).

(2) In removal proceedings arising within the jurisdiction of the United States Court of Appeals for the Ninth Circuit, the offense of domestic battery in violation of sections 242 and 243(e)(1) of the California Penal Code does not presently qualify categorically as a "crime of violence" under 18 U.S.C. § 16 (2000), such that it may be considered a "crime of domestic violence" under section 237(a)(2)(E)(i) of the Act. *Ortega-Mendez v. Gonzales*, 450 F.3d 1010 (9th Cir. 2006), followed.

FOR RESPONDENT: Bill Waddell, Esquire, San Diego, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Kathryn E. Stuever, Assistant Chief Counsel

BEFORE: Board Panel: COLE, FILPPU, and PAULEY, Board Members.

COLE, Board Member:

The Department of Homeland Security ("DHS") appeals from an Immigration Judge's February 17, 2005, decision terminating removal proceedings against the respondent, who had been charged with deportability under sections 237(a)(2)(A)(ii) and (E)(i) of the Immigration and Nationality Act, 8 U.S.C. §§ 1227(a)(2)(A)(ii) and (E)(i) (2000), as an alien convicted of two or more crimes involving moral turpitude and a crime of domestic violence, respectively. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico and a lawful permanent resident of the United States. The record reflects that he has sustained two criminal convictions in California that are relevant to these proceedings: (1) on March 1, 2001, for the offense of domestic battery in violation of sections 242 and 243(e)(1) of the California Penal Code; and (2) on

September 23, 2003, for the offense of grand theft in violation of section 487(a) of the California Penal Code.

The DHS initiated removal proceedings against the respondent in March 2004, charging him with deportability under section 237(a)(2)(E)(i) of the Act based on his domestic battery conviction. In May 2004, an additional charge of deportability was lodged against him under section 237(a)(2)(A)(ii) of the Act, based jointly on the domestic battery and grand theft convictions. The Immigration Judge dismissed the charges of deportability and terminated the removal proceedings, finding that the respondent's domestic battery offense did not qualify as either a "crime involving moral turpitude" or a "crime of domestic violence" under the immigration laws. It is from this determination that the DHS appeals.

## II. ISSUE

This appeal requires us to determine whether the respondent's March 2001 conviction for domestic battery in violation of sections 242 and 243(e) of the California Penal Code qualifies as a conviction for a "crime involving moral turpitude" or a "crime of domestic violence" within the meaning of sections 237(a)(2)(A)(ii) and (E)(i) of the Act, respectively.

## III. DOMESTIC BATTERY UNDER CALIFORNIA LAW

Section 242 of the California Penal Code, which defines the California offense of "battery," provides in its entirety that "[a] battery is any willful and unlawful use of force or violence upon the person of another." The California courts have construed section 242 to require an unprivileged "'touching of the victim'" by means of force or violence. *People v. Jackson*, 91 Cal. Rptr. 2d 805, 809 (Cal. Ct. App. 2000) (quoting *People v. Marshall*, 931 P.2d 262, 282 (Cal. 1997)). However, they have also significantly qualified the statutory language, emphasizing that "[t]he word 'violence' has no real significance." *People v. Mansfield*, 245 Cal. Rptr. 800, 802 (Cal. Ct. App. 1988). Thus, the courts have held that "the force used need not be violent or severe and need not cause pain or bodily harm." *Gunnell v. Metrocolor Labs., Inc.*, 112 Cal. Rptr. 2d 195, 206 (Cal. Ct. App. 2001) (citing *People v. Rocha*, 479 P.2d 372, 377 n.12 (Cal. 1971) (quoting 1 Bernard E. Witkin, *California Crimes* 243-44 (1963))). Furthermore, although battery is a "specific intent" crime in California, the requisite intent pertains only to the commission of the "touching" that completes the offense, and not to the infliction of harm on the victim. *People v. Mansfield*, *supra*, at 803 ("A person need not have an intent to injure to commit a battery. He only needs to intend to commit the act.").

Section 243 of the California Penal Code specifies a range of punishments that may be imposed on an offender convicted of battery. According to the statute, the maximum term of imprisonment available for a given offender is

tied to the characteristics of his particular offense, such as the nature and extent of any injuries he may have caused to the victim, or the victim's inclusion in some class of persons accorded heightened protection by the California Legislature.  The respondent's sentence was imposed pursuant to section 243(e)(1), which provides, in pertinent part, as follows:

> When a battery is committed against a spouse, a person with whom the defendant is cohabiting, a person who is the parent of the defendant's child, former spouse, fiancé, or fiancée, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship, the battery is punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail for a period of not more than one year, or by both that fine and imprisonment.[1]

Because the maximum sentence that may be imposed pursuant to section 243(e)(1) is a 1-year term of incarceration in county jail, the offense is classified as a misdemeanor under section 17(a) of the California Penal Code.

## IV.  DISCUSSION

### A.  Crimes Involving Moral Turpitude

Based in part on the aforementioned domestic battery conviction, the DHS charged the respondent with deportability under section 237(a)(2)(A)(ii) of the Act, which provides as follows:

> Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.

As a general rule, a crime involves "moral turpitude" if it is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. *Matter of Olquin*, 23 I&N Dec. 896, 896 (BIA 2006); *Matter of Torres-Varela*, 23 I&N Dec. 78, 83 (BIA 2001); *see also Grageda v. U.S. INS*, 12 F.3d 919, 921 (9th Cir. 1993) (noting that courts have described moral turpitude in general terms as "an 'act of baseness or depravity contrary to accepted moral standards'" (quoting *Guerrero de Nodahl v. INS*, 407 F.2d 1405, 1406 (9th Cir. 1969)), and as "'basically offensive to American ethics and accepted moral standards'" (quoting *Castle v. INS*, 541 F.2d 1064, 1066 (4th Cir. 1976))).  Whether a particular crime involves moral turpitude is determined by reference to the statutory definition of the offense and, if necessary, to authoritative court decisions in the convicting jurisdiction that elucidate the meaning of

---

[1]  Section 243(f)(10) of the California Penal Code further defines the phrase "dating relationship" to mean "frequent, intimate associations primarily characterized by the expectation of affectional or sexual involvement independent of financial considerations."

equivocal statutory language. *See Matter of Olquin*, *supra*, at 897 & n.1. However, we may not consider the actual conduct underlying the conviction. *Matter of Torres-Varela*, *supra*, at 84 (citing *McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir. 1980)).

Historically, a case-by-case approach has been employed to decide whether battery (or assault and battery) offenses involve moral turpitude. It has long been recognized that not all crimes involving the injurious touching of another reflect moral depravity on the part of the offender, even though they may carry the label of assault, aggravated assault, or battery under the law of the relevant jurisdiction. *Matter of B-*, 1 I&N Dec. 52, 58 (BIA, A.G. 1941) (finding that second-degree assault under Minnesota law does not qualify categorically as a crime involving moral turpitude (following *United States ex rel. Zaffarano v. Corsi*, 63 F.2d 757, 758 (2d Cir. 1933))). We have continued to espouse that view in our more recent cases on the subject. *Matter of Fualaau*, 21 I&N Dec. 475 (BIA 1996) (holding that third-degree assault under the law of Hawaii, an offense that involved recklessly causing bodily injury to another person, is not a crime involving moral turpitude); *Matter of Perez-Contreras*, 20 I&N Dec. 615 (BIA 1992) (concluding that third-degree assault under the law of Washington, an offense that involved negligently causing bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering, is not a crime involving moral turpitude).

At the same time, we have recognized that assault and battery offenses may appropriately be classified as crimes of moral turpitude if they necessarily involved aggravating factors that significantly increased their culpability. For example, assault and battery with a deadly weapon has long been deemed a crime involving moral turpitude by both this Board and the Federal courts, because the knowing use or attempted use of deadly force is deemed to be an act of moral depravity that takes the offense outside the "simple assault and battery" category. *See Gonzales v. Barber*, 207 F.2d 398, 400 (9th Cir. 1953), *aff'd on other grounds*, 347 U.S. 637 (1954); *Matter of Medina*, 15 I&N Dec. 611, 614 (BIA 1976), *aff'd sub nom. Medina-Luna v. INS*, 547 F.2d 1171 (7th Cir. 1977); *see also Sosa-Martinez v. U.S. Att'y Gen.*, 420 F.3d 1338, 1342 (11th Cir. 2005); *Yousefi v. U.S. INS*, 260 F.3d 318, 326-27 (4th Cir. 2001); *Pichardo v. INS*, 104 F.3d 756, 760 (5th Cir. 1997); *United States ex rel. Zaffarano v. Corsi*, *supra*. Likewise, assault and battery offenses that necessarily involved the *intentional* infliction of *serious* bodily injury on another have been held to involve moral turpitude because such intentionally injurious conduct reflects a level of immorality that is greater than that associated with a simple offensive touching. *Sosa-Martinez v. U.S. Att'y Gen.*, *supra*; *Nguyen v. Reno*, 211 F.3d 692, 695 (1st Cir. 2000); *Matter of P-*, 7 I&N Dec. 376, 377 (BIA 1956).

Moreover, it has often been found that moral turpitude necessarily inheres in assault and battery offenses that are defined by reference to the infliction

of bodily harm upon a person whom society views as deserving of special protection, such as a child, a domestic partner, or a peace officer, because the intentional or knowing infliction of injury on such persons reflects a degenerate willingness on the part of the offender to prey on the vulnerable or to disregard his social duty to those who are entitled to his care and protection. *Garcia v. Att'y Gen. of U.S.*, 329 F.3d 1217, 1222 (11th Cir. 2003); *Grageda v. INS*, *supra*; *Guerrero de Nodahl v. INS*, *supra*; *Matter of Tran*, 21 I&N Dec. 291 (BIA 1996); *Matter of Danesh*, 19 I&N Dec. 669 (BIA 1988). The DHS argues that the respondent's offense falls within this class of cases because he was necessarily convicted of battering "a spouse, a person with whom the defendant is cohabiting, a person who is the parent of the defendant's child, former spouse, fiancé, or fiancée, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship" in violation of section 243(e)(1). Under the circumstances of this case, we do not agree.

The respondent was convicted of committing a "battery," as defined by section 242 of the California Penal Code. The minimal conduct necessary to complete such an offense in California is simply an intentional "touching" of another without consent. Thus, one may be convicted of battery in California without using violence and without injuring or even intending to injure the victim. Such an offense is in the nature of a simple battery, as traditionally defined, and on its face it does not implicate any aggravating dimension that would lead us to conclude that it is a crime involving moral turpitude.

Moreover, in each of the aforementioned cases that involved battery offenses committed against the members of a protected class, the crimes at issue were defined by statute to require proof of the actual infliction of some tangible harm on a victim. *See Garcia v. Att'y Gen. of U.S.*, *supra* (aggravated child abuse under Florida law); *Grageda v. INS*, *supra* (willful infliction of corporal injury resulting in a traumatic condition on a spouse under California law); *Guerrero de Nodahl v. INS*, *supra* (willful infliction of "cruel or inhuman corporal punishment or injury" on a child in violation of California law); *Matter of Tran*, *supra* (willful infliction of corporal injury resulting in a traumatic condition on a spouse, cohabitant, or parent of the perpetrator's child under California law); *Matter of Danesh*, *supra* (aggravated assault against a peace officer under Texas law, resulting in bodily harm to the officer and requiring knowledge by the offender that his force is directed toward an officer who is performing an official duty).

In the instant case, by contrast, neither the statute of conviction nor the admissible portion of the respondent's conviction record reflects that his battery was injurious to the victim or that it involved anything more than the

minimal nonviolent "touching" necessary to constitute the offense.[2]  In the absence of admissible evidence reflecting that the respondent's offense occasioned actual or intended physical harm to the victim, we agree with the Immigration Judge that the existence of a current or former "domestic" relationship between the perpetrator and the victim is insufficient to establish the morally turpitudinous nature of the crime.

Because we agree with the Immigration Judge that the California offense of domestic battery does not qualify categorically as a crime involving moral turpitude, the respondent is not deportable under section 237(a)(2)(A)(ii), and we have no occasion to decide whether his 2003 conviction for grand theft was for a crime involving moral turpitude or whether his two crimes arose out of a "single scheme of criminal misconduct."

## B.  Crimes of Domestic Violence

Because the respondent's domestic battery offense is not a crime involving moral turpitude, the respondent's deportability depends on whether the offense qualifies as a "crime of domestic violence" under section 237(a)(2)(E)(i) of the Act.  *See generally Tokatly v. Ashcroft*, 371 F.3d 613 (9th Cir. 2004).  Section 237(a)(2)(E)(i) provides, in pertinent part, as follows:

> Any alien who at any time after admission is convicted of a crime of domestic violence . . . is deportable. For purposes of this clause, the term "crime of domestic violence" means any crime of violence (as defined in section 16 of title 18, United States Code) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

As this statutory language makes clear, an offense cannot qualify as a "crime of domestic violence" unless it is also a "crime of violence," as defined by 18 U.S.C. § 16 (2000).[3]  The United States Court of Appeals for the Ninth

---

[2]  Where a statute encompasses some offenses that do involve moral turpitude as well as offenses that do not, the United States Court of Appeals for the Ninth Circuit consults the record of conviction to determine whether the particular offense of which the respondent was convicted involved moral turpitude. *Hernandez-Martinez v. Ashcroft*, 343 F.3d 1075, 1076-77 (9th Cir. 2003).

[3]  To qualify as a "crime of violence" under 18 U.S.C. § 16(a), an offense must either have the use, attempted use, or threatened use of physical force against the person or property of another as an element; to qualify under § 16(b), it must be a felony that, by its nature, involves a substantial risk that physical force against the person or property of another may

(continued...)

Circuit, in whose jurisdiction this proceeding arises, has recently issued a precedent decision which confirms the Immigration Judge's conclusion that battery under section 242 does not qualify categorically as a crime of violence under 18 U.S.C. § 16. *Ortega-Mendez v. Gonzales*, 450 F.3d 1010 (9th Cir. 2006). That determination is binding on this Board and the Immigration Judges in cases arising within the jurisdiction of the Ninth Circuit. *Matter of Yanez*, 23 I&N Dec. 390, 396-97 (BIA 2002); *Matter of Anselmo*, 20 I&N Dec. 25, 31 (BIA 1989).

Although a violation of section 242 does not qualify categorically as a crime of violence under 18 U.S.C. § 16, the *Ortega-Mendez* court acknowledged the possibility that it could qualify as a crime of violence under a so-called "modified categorical inquiry." *See Ortega-Mendez v. Gonzales*, *supra*, at 1021. Where an alien was convicted by means of a plea agreement and the statutory definition of the offense is broad enough to encompass some conduct that would conform to the meaning of the phrase "crime of violence," as well as conduct that would not, Ninth Circuit law permits the adjudicator to consult a limited class of judicially-noticeable documents constituting the "record of conviction" in order to determine whether the alien pled guilty to conduct comprehended within the scope of the "crime of violence" definition. *See Tokatly v. Ashcroft*, *supra*, at 624. According to the United States Supreme Court, evidence that may be consulted for this purpose includes "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005).

The conviction record admitted into evidence by the Immigration Judge in this matter consists of certified copies of the criminal complaint that charged the offense, the plea agreement, the criminal judgment, and a police arrest report. The complaint and plea agreement merely echo the statutory language of section 242, which refers to the willful and unlawful use of "force or violence" against another. *Ortega-Mendez v. Gonzales*, *supra*, makes clear that this statutory language is not sufficient–in light of the interpretation that language is given by the California courts–to qualify the offense as a crime of violence. The criminal judgment is a preprinted form that memorializes the respondent's guilty plea and reflects the entry of a judgment of guilt and the imposition of a sentence; however, it contains no explicit findings on the part of the court as to the factual basis for the respondent's plea.

The police report, standing alone, is not admissible to prove the nature of the respondent's conviction because there is no indication that it was incorporated into the charging instrument under the convicting state's rules of criminal

---

[3] (...continued)

be used in the course of committing the offense. *See generally Leocal v. Ashcroft*, 543 U.S. 1 (2004).

procedure. *Matter of Teixeira*, 21 I&N Dec. 316, 319-20 & n.2 (BIA 1996). While Ninth Circuit law permits police reports to be considered in the context of a "modified categorical inquiry" if the factual narrative set forth in the report is "specifically incorporated into the guilty plea or admitted by a defendant" during a plea colloquy, the present record does not reflect that any such incorporation or admission occurred here. *Parrilla v. Gonzales*, 414 F.3d 1038, 1044 (9th Cir. 2005). Accordingly, the police report cannot be considered in determining whether the respondent is removable.

Because the admissible portions of the respondent's conviction record do not reflect that he pled guilty to conduct encompassed within the "crime of violence" definition, we agree with the Immigration Judge that the DHS has not satisfied its burden of proving by clear and convincing evidence that the respondent has been convicted of a crime of violence under 18 U.S.C. § 16 or, by extension, a crime of domestic violence under section 237(a)(2)(E)(i) of the Act.

## V. CONCLUSION

In conclusion, we find no reversible error in the Immigration Judge's determination that the respondent's California domestic battery conviction was not for a crime involving moral turpitude or a crime of domestic violence under the immigration laws. The respondent's grand theft conviction, standing alone, cannot support any of the charges of deportability filed against him by the DHS. Therefore the DHS's appeal from the Immigration Judge's decision will be dismissed.

**ORDER:** The appeal of the Department of Homeland Security is dismissed.