In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-2215

CARLOS GARCIA-MEZA,

*Petitioner,*

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,[Œ]

*Respondent.*

_____

On Petition for Review of an Order of the
Board of Immigration Appeals.
No. A47 764 554

_____

ARGUED NOVEMBER 30, 2007—DECIDED FEBRUARY 5, 2008

_____


Before EASTERBROOK, *Chief Judge,* and FLAUM and
WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* The immigration authorities
believe that Carlos Garcia-Meza has committed a "crime
of moral turpitude" that warrants his removal from this
country. *See* 8 U.S.C. § 1227(a)(2)(A)(i)(I). Garcia-Meza, a
native and citizen of Mexico, has been a lawful permanent
resident of the United States since 2001. The Illinois
crime to which he pleaded guilty in 2002 sounds fearsome

_____

[Œ] We have replaced Alberto Gonzales with Michael Mukasey
as the named respondent. *See* Fed. R. App. P. 43(c)(2).

enough: "aggravated battery of a peace officer." *See* 720 ILCS 5/12-4(b)(6). But states are free to give whatever names they like to crimes, and a brief look at Illinois law shows that the behavior punished under this statute can be small potatoes. Spitting on someone, for example, qualifies as battery, and if the victim is a police officer, it is aggravated battery. *See People v. Peck*, 633 N.E.2d 222, 223 (Ill. App. Ct. 1994). Garcia-Meza's own crime was to grab two of a police officer's fingers and twist them. He had asked for the officer's name and at the same time, ill-advisedly moved his hand toward the officer's name tag. The officer pushed his hand away, and that's when the grabbing happened. The officer was not injured, and Garcia-Meza received two years' probation.

The immigration judge and then the Board of Immigration Appeals rejected Garcia-Meza's argument that his crime is not morally turpitudinous, and issued a final order of removal. This petition for review followed. For the reasons set out below, we grant the petition for review, vacate the BIA's decision, and remand for further proceedings.

Although the phrase "crime involving moral turpitude" is notoriously baffling, the Supreme Court has rejected a vagueness challenge to it, *Jordan v. De George*, 341 U.S. 223, 232 (1951), so we will not dwell on Garcia-Meza's own such challenge. *See Soetarto v. INS*, 516 F.2d 778, 780 (7th Cir. 1975). The Board defines crime of moral turpitude as "conduct that shocks the public conscience as being 'inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" *In re Solon*, 24 I. & N. Dec. 239, 240 (BIA 2007) (quoting *In re Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999)). We put our own gloss on the term in *Mei v. Ashcroft*, 393 F.3d 737, 740 (7th Cir. 2004), stating that crimes of moral turpitude are usually serious crimes (in terms of the magnitude of the loss

they cause or the indignation in the public they arouse) that are committed deliberately.

In holding in this case that an Illinois conviction for aggravated battery of a peace officer is such a crime, both the IJ and the BIA relied heavily on *In re Danesh*, 19 I. & N. Dec. 669 (BIA 1988), in which the Board found that a Texas conviction for aggravated assault on a police officer was a crime of moral turpitude. But a critical fact distinguishes this case from *Danesh*, although both the IJ and the BIA missed it. (The IJ stated that *Danesh* was "directly on point.") Namely, the Texas statute at issue in that case required as an element that the officer sustain bodily injury. *Id.* at 673. The Illinois statute at issue here contains no such requirement. The BIA mistakenly thought that it does, but even the Attorney General concedes that this was error; we shall briefly explain why. The Illinois statute punishes two types of battery: intentionally or knowingly causing another "bodily harm," *or* making "physical contact of an insulting or provoking nature." 720 ILCS 5/12-3(a)(1)-(2) (2003). Garcia-Meza's charging papers indicate that he committed the second type of battery: he made contact of an insulting or provoking nature. A second Illinois statute lists aggravations of simple battery, including when the batterer "Knows the individual harmed to be a peace officer . . . while such officer . . . is engaged in the execution of any official duties." 720 ILCS 5/12-4(b)(6) (2003). The Board thought that the language "the individual harmed" encompasses a bodily harm requirement, but the Supreme Court of Illinois rejected this reading almost thirty years ago, *People v. Hale*, 395 N.E.2d 929, 931-32 (Ill. 1979), holding that "the individual harmed" simply means the victim of the battery. Battery of the insulting or provoking variety can indeed become aggravated battery against a peace officer even if the officer sustains no bodily injury.

This fact distinguishes our case from *Danesh*. The government believes the distinction is immaterial, but we disagree. The BIA itself in *Danesh* emphasized the bodily harm requirement in concluding that the assault crime was serious enough to be turpitudinous. 19 I. & N. Dec. at 673. The Board also noted that the Texas statute—like the Illinois statute here—requires that the accused know that the victim is a peace officer, and stated that violating it therefore "exhibits a deliberate disregard for the law." *Id.* Hence the statute in *Danesh* shares the Illinois statute's requirement that the accused know that the victim is an officer (suggesting that Garcia-Meza's crime is turpitudinous) but is more demanding than the Illinois statute in requiring that the victim suffer bodily injury (suggesting that it is not).

The question then becomes whether knowledge that the victim is a police officer, without any requirement of harm or violence, renders battery of a peace officer turpitudinous. If so, the BIA's decision can be saved despite the Board's misapplication of the Illinois battery statute. The Board has not decided this precise question, but its subsequent reading of *Danesh* suggests that battery of a police officer without causing harm is not a crime of moral turpitude. In *In re Sanudo*, 23 I. & N. Dec. 968 (BIA 2006), the Board considered whether domestic battery in California is a crime of moral turpitude. In noting that assault and battery can be morally turpitudinous but usually aren't, the court cited a string of decisions including *Danesh* that involved "the infliction of bodily harm upon a person whom society views as deserving of special protection, such as a child, a domestic partner, or a peace officer." *Id.* at 971-72. But then the Board distinguished those cases, stating that the crimes there "were defined by statute to require proof of the actual infliction of some tangible harm on a victim." *Id.* at 972. The domestic battery statute did not require

bodily harm, and the court concluded that the victim's protected status alone did not implicate moral turpitude. *Id.* at 973. *Accord Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1059-60 (9th Cir. 2006). Garcia-Meza's case is analogous to *Sanudo*: while the victim is a member of a specially protected class (peace officers), the statute of conviction does not require any bodily harm, and special status alone may not be enough. *Cf. In re Logan*, 17 I. & N. Dec. 367, 368 (BIA 1980) (crime of "interference" with police officer is crime of moral turpitude because it involved a deadly weapon).

We have been discussing BIA decisions, but it is an open question in this circuit whether to accord *Chevron*-style deference to the Board's conclusion that violation of a particular state statute amounts to a crime of moral turpitude. *Mei*, 393 F.3d at 739-40. Even if such deference were appropriate, the BIA has not decided the issue in this case, because it has not construed whether a conviction for battering a peace officer without causing bodily harm amounts to a crime of moral turpitude. We expect that in addressing this issue on remand, the Board will consult the decisions that have considered this subject in other contexts and concluded that an assault or battery on a police officer without bodily harm or other violence, or the *intent* to cause harm or use violence (also absent here), should not be included among crimes of moral turpitude. *See Partyka v. U.S. Attorney General*, 417 F.3d 408 (3d Cir. 2005); *U.S. ex rel. Zaffarano v. Corsi*, 63 F.2d 757 (2d Cir. 1933); *Zaranska v. Dep't of Homeland Security*, 400 F. Supp. 2d 500 (E.D.N.Y. 2005); *Ciambelli ex rel. Maranci v. Johnson*, 12 F.2d 465 (D. Mass. 1926). This is not necessarily to say that these decisions preclude the Board from reaching a different decision, but a rational (and wise) adjudicator will take account of the conclusions that others have reached, and the reasons behind those conclusions.

Illinois follows the common law rule that any contact, however slight, may constitute a battery. *See Acevedo v. Canterbury*, 457 F.3d 721, 725 (7th Cir. 2006). At oral argument, we posed the hypothetical that in Illinois, an individual angry at being given a parking ticket might crumple up the ticket and throw it on the ground and face charges of aggravated battery if the ticket hit the issuing officer's shoe. We would be surprised if the BIA concluded that such behavior is "inherently base, vile, or depraved," or that it would "shock the public's conscience." In the language of this court's decision in *Mei*, the magnitude of the loss it causes is small (there is no injury, although the officer might have hurt feelings), and it does not arouse great public indignation (everybody hates parking tickets). We also asked the parties for a citation of any decision in which battery or assault of a police officer without violence or bodily harm was found to be a crime of moral turpitude. The government pointed to *Mei*, in which we found that aggravated (meaning high-speed) fleeing from an officer is such a crime. But that case did not involve an assault or battery statute, and regardless, the difference between a 100+ mile-per-hour car chase and a little finger grabbing seems obvious enough.

At the end of the day, it is the Board's prerogative to decide whether Garcia-Meza committed a crime of moral turpitude. For the reasons we have explained, its decision that his offense is such a crime is based on a misapprehension of Illinois law and must be vacated. We therefore GRANT the petition for review. Since we are remanding for further proceedings, we do not today reach Garcia-Meza's argument that his criminal defense counsel rendered ineffective assistance by failing to advise him of the immigration consequences of pleading guilty to battery.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*