ANN WALSH BRADLEY, J.
¶ 71. (<dissenting). This case represents yet another example of the intersection of state criminal law with the federal immigration law. It likewise offers another example of why the mantra of the bar and bench alike should be: read the relevant statute.
¶ 72. Had the attorney merely read the governing statute, he would have discovered that the crime to which Ortiz-Mondragon pled made him deportable. Aside from the subsection on crimes involving moral *47 turpitude (CIMTs), the statute has another subsection clearly rendering noncitizens deportable for a conviction of domestic violence. 8 U.S.C § 1227(a)(2)(E)(i).
¶ 73. Because the consequence of a conviction is clear, the duty to give accurate immigration advice is likewise clear. Padilla v. Kentucky, 559 U.S. 356, 368 (2010) ("when the deportation consequence is truly clear,. . . the duty to give correct advice is equally clear.").
¶ 74. Nevertheless, the majority essentially ignores the relevant domestic abuse subsection of the statute and the attorney's apparent failure to read it, and engages in a lengthy discussion of CIMTs. Rather than focusing on whether the specific crime at issue qualifies as a CIMT under the controlling federal precedent, it focuses instead on whether there is a clear definition of "crime of moral turpitude" and a consistent application of the concept across the federal judicial circuits.
¶ 75. Because the circuit court denied OrtizMondragon's motion for postconviction relief without a hearing, it is hard to know the extent of the information the attorney provided and his basis for it. The record is wholly insufficient to determine the merits of the claim. The majority, however, purports to perform this task, concluding that Ortiz-Mondragon's claim must fail.
¶ 76. Padilla's requirement that attorneys inform their clients of the immigration consequences of entering a plea was not a mere suggestion. It set the standard for attorney performance under the Sixth Amendment. Unlike the majority, I conclude that Ortiz-Mondragon's claim of a Padilla violation cannot be so quickly brushed aside.
*48 ¶ 77. Because the consequence of deportation is clear under the subsection on domestic abuse (8 U.S.C. § 1227(a)(2)(E)(i)), the duty under the Sixth Amendment to give correct advice is likewise clear. Given that no hearing was held, it is impossible to know the nature and extent of the advice given to the defendant. Without a developed record, it is also impossible to determine whether there was a violation of the defendant's Sixth Amendment right to effective assistance of counsel. Accordingly, I would remand to the circuit court for a Machner hearing.[1]
I
¶ 78. The majority ignores that had defense counsel done the bare minimum amount of research and merely read the governing statute, he would have discovered that the crime to which Ortiz-Mondragon pled made him deportable. Aside from the subsection on CIMTs, the statute has another subsection clearly rendering noncitizens deportable for a conviction of domestic violence: 8 U.S.C. § 1227(a)(2)(E)(i).
¶ 79. In language that is clear and succinct, that subsection provides that any noncitizen who at any time after admission is convicted of a crime of domestic violence is deportable:
Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable.
8 U.S.C. § 1227(a)(2)(E)(i) (emphasis added).
*49 ¶ 80. The subsection further details what qualifies as a crime of domestic violence:
For purposes of this clause, the term "crime of domestic violence" means any crime of violence (as defined in section 16 of Title 18) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.
8 U.S.C. § 1227(a)(2)(E)(i).[2]
¶ 81. If there is any doubt about the plain meaning of the subsection of the statute, it is put to rest by a recent decision by the United States Supreme Court. In Mellouli v. Lynch, 135 S. Ct. 1980, 1990 n.11 (June 1, 2015), the Court described the subsection as "specifjying] the conduct that subjects an alien to removal." See also id. at 1992 (Thomas, J. dissenting) (describing § 1227(a)(2)(E)(i) as "making removable [a]ny alien *50 who ... is convicted of a crime of domestic violence,' where 'the term "crime of domestic violence" means any crime of violence . . . committed by' a person with a specified family relationship with the victim").
¶ 82. This is in accord with prior circuit court decisions. See, e.g., Carrillo v. Holder, 781 F.3d 1155 (9th Cir. 2015) (noncitizen rendered removable due to his domestic violence conviction); Florez v. Holder, 779 F.3d 207, 209 (2d Cir. 2015) ("8 U.S.C. § 1227(a)(2)(E)(i), □ makes any alien removable if, 'at any time after admission,' the alien 'is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment.'"); Gonzalez-Gonzalez v. Ashcroft, 390 F.3d 649, 650 (9th Cir. 2004) ("§ 1227 is titled 'Deportable aliens' and 'Domestic Violence' is listed as an offense under § 1227(a)(2), which lists criminal grounds of deportation."); Csekinek v. INS, 391 F.3d 819, 826-827 (6th Cir. 2004) (observing that 8 U.S.C. § 1227(a)(2)(E)(i) "renders deportable any alien convicted of a domestic violence offense after entry into the United States.").[3]
¶ 83. Like a conviction for a CIMT, a domestic violence conviction renders noncitizens ineligible for relief under 8 U.S.C. § 1229b(b). In relevant part, it provides that "The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is *51 inadmissible or deportable from the United States if the alien— . . . has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title." 8 U.S.C. § 1229b(b)(1). Both CIMTs and crimes of domestic violence are listed in 8 U.S.C. § 1227(a)(2).
¶ 84. Fundamental to the practice of law is being familiar with the relevant statutes. Failure to do so constitutes a quintessential example of deficient performance. See Hinton v. Alabama, 134 S. Ct. 1081, 1089 (2014) ("[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland.").
¶ 85. Reading the governing statutes is required by the prevailing professional norms which, under Strickland, set the standards for deficient performance. Strickland v. Washington, 466 U.S. 668, 688 (1984) ("[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). For example, Standard 4-6.3(d) of the ABA Standards for Criminal Justice, Prosecution and Defense Functions (4th ed. 2015), states that "[d]efense counsel should investigate and be knowledgeable about sentencing procedures, law, and alternatives, collateral consequences and likely outcomes, . . . and advise the client on these topics before permitting the client to enter a negotiated disposition."
¶ 86. Likewise, Standard 14-3.2 of the ABA Standards for Criminal Justice, Pleas of Guilty (3d ed. 1999), requires attorneys to investigate the law before advising defendants about pleas. The commentary advises that because the immigration consequence of a guilty plea may well be a client's greatest priority, *52 "counsel should be familiar with the basic immigration consequences that flow from different types of guilty pleas, and should keep this in mind in investigating law and fact and advising the client." Id. at 127.
¶ 87. Here, had defense counsel read the governing statute he would have been able to provide OrtizMondragon with more than a general warning.[4] Nevertheless, the majority attempts to circumvent this problem by simply dismissing the domestic abuse subsection in a footnote. It ignores not only the clear language of the subsection but also Padilla's clear directive: attorneys must "provide [their] client[s] with available advice . . . Padilla, 559 U.S. at 371.
II
¶ 88. Rather than discussing the plain language of the domestic abuse subsection or focusing on whether the crime at issue renders Ortiz-Mondragon deportable, the majority takes a different approach. It discusses the lack of definition of CIMTs in the immigration statute, that other courts have deemed the term "crime involving moral turpitude" ambiguous, and that different circuits have different tests for *53 determining whether a crime is a CIMT. Majority op., ¶¶ 37, 39, 41. Accordingly, the majority concludes that the immigration consequences were unclear and that defense counsel's performance was not deficient because he needed to do no more than tell OrtizMondragon that a conviction may have negative immigration consequences.
¶ 89. The majority ignores, however, that this case did not require defense counsel to determine the definition of a CIMT. Rather he needed to determine only if the crime Ortiz-Mondragon faced, substantial battery with a domestic abuse enhancer, qualified as a CIMT. Further, defense counsel was not required to determine what other federal circuits would have done. Rather, he should have looked at the law in the Seventh Circuit, which governs Ortiz-Mondragon's case.
¶ 90. Review of removal proceedings conducted in this federal judicial circuit is performed by the Seventh Circuit Court of Appeals and therefore its precedent governs those cases. See 8 U.S.C. § 1252(b)(2) ("The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings.").
¶ 91. Immigration removal proceedings for Wisconsin residents, such as Ortiz-Mondragon, are conducted in Chicago. See Executive Office for Immigration Review, Department of Justice, "EOIR Immigration Court Listing" (2015), available at www.justice. gov/eoir/immigration-court-administrative-control-list# Chicago.[5] Thus, upon completion of his sentence Ortiz *54 Mondragon's removal proceeding would have occurred in Chicago and Seventh Circuit Court of Appeals precedent would govern.
¶ 92. A basic search of Seventh Circuit cases provides a clear answer to whether domestic battery qualifies as a CIMT. The answer is "yes." In Coyomani-Cielo v. Holder, the Seventh Circuit plainly stated that "[defendant] was convicted of domestic battery, which qualifies as a CIMT . . . ." 758 F.3d 908, 910 (7th Cir. 2014).
¶ 93. The majority attempts to explain away this clear statement by inaccurately asserting that it was presented as a concession by the defendant. Majority op., ¶ 68 n.20. It was neither a concession nor even a debatable point. Rather, the court made this statement as a clear statement of fact in its description of the background of the case.
¶ 94. Admittedly, Coyomani-Cielo considered a conviction under Illinois law. Accordingly, to determine whether Ortiz-Mondragon's conviction would be a CIMT, one must take the additional step of comparing the Illinois statute at issue in that case, 720 ILCS 5/12-3.2, with the Wisconsin statutes at issue, Wis. Stat. §§ 940.19(2), 968.075.
¶ 95. Under the Illinois statute, domestic battery is committed by: "knowingly without legal justification by any means: (1) Causing] bodily harm to any family or household member; (2) Mak[ing] physical contact of an insulting or provoking nature with any family or household member."[6] Under the Wisconsin statute, *55 Ortiz-Mondragon was convicted of "causing] substantial bodily harm to another by an act done with intent to cause bodily harm to that person or another." Wis. Stat. § 940.19(2). The domestic abuse enhancer means that the individual Ortiz-Mondragon inflicted harm on was "his or her spouse or former spouse, ... an adult with whom [he] resides or formerly resided or ... an adult with whom the person has a child in common." Wis. Stat. § 968.075.
¶ 96. The statutes reveal that a Wisconsin conviction for substantial battery with a domestic abuse enhancer necessarily would qualify as domestic battery under Illinois law. Thus, the crime for which Ortiz-Mondragon was convicted should likewise be deemed a CIMT.
¶ 97. Other Seventh Circuit precedent is in accord. In Garcia-Meza v. Mukasey, 516 F.3d 535 (7th Cir. 2008), the court considered whether aggravated battery of a police officer qualified as a CIMT. The court observed that "crimes involving moral turpitude are usually serious crimes (in terms of the magnitude of the loss they cause or the indignation in the public they arouse) that are committed deliberately." Id. at 536. It commented that precedent has "emphasized the bodily harm requirement in concluding that the assault crime was serious enough to be turpitudinous." Id. at 537. It then referred to precedent determining that "moral turpitude necessarily inheres in assault and battery offenses that are defined by reference to the infliction of bodily harm upon a person whom *56 society views as deserving of special protection, such as a child, a domestic partner, or a peace officer." In re Sanudo, 23 I. & N. Dec. 968, 971-72 (B.I.A. 2006).
¶ 98. Ultimately, the Seventh Circuit determined that battery of a police officer did not necessarily constitute a CIMT because the Illinois statute at issue did not include bodily harm as an element. Garcia-Meza, 516 F.3d at 538. Garcia-Meza is instructive. Its analysis reveals that a crime qualifies as a CIMT when it includes as an element bodily harm to a person who society recognizes as deserving of special protection, such as a domestic partner. See also Castellanos v. Holder, 652 F.3d 762, 764 (7th Cir. 2011) (defendant conceded his domestic battery conviction constituted a CIMT); Benaouicha v. Holder, 600 F.3d 795, 797 (7th Cir. 2010) (noting defendant's concession that his conviction for the battery of his wife constituted a conviction for a CIMT).[7] Ortiz-Mondragon's conviction for substantial battery with a domestic abuse enhancer meets these criteria.
*57 ¶ 99. Even if defense counsel had been unable to find and analyze the governing precedent, he could have determined that substantial battery with a domestic abuse enhancer qualified as a CIMT by consulting legal practice guides. Padilla instructs attorneys to consult guidebooks to educate themselves about the relevant immigration law: "we expected that counsel who were unaware of the discretionary relief measures would 'folio[w] the advice of numerous practice guides.'" 559 U.S. at 368.
¶ 100. Practice guides indicate that substantial battery with a domestic abuse enhancer qualifies as a CIMT. For example, Maria Baldini-Porterman's comprehensive guide on immigration consequences conveys the same information as Garcia-Meza:
Where the elements of a domestic battery offense do not require either actual infliction of serious harm or specific intent and physical injury to the victim, the offense is not categorically a crime involving moral turpitude. The willful infliction of corporal injury on a spouse, cohabitant, or parent of the offender's child in violation of California Penal Code § 273.5(a) has been found to be a crime involving moral turpitude.
Maria Baldini-Porterman, Defending Non-Citizens in Illinois, Indiana and Wisconsin (Heartland Alliance's National Immigrant Justice Center 2009).
¶ 101. Likewise, another practice guide states: "moral turpitude has been found where the assault and battery offenses are defined by reference to the infliction of bodily harm on someone whom society views as deserving of special protection (such as a child or spouse)." Austin T. Fragomen, Jr. and Steven C. *58 Bell, Immigration Fundamentals: A Guide to Law and Practice, § 7:2.2 at 7-32 (4th ed. 2014).
¶ 102. The "Immigration Consequences Crimes Summary Checklist," published by the Immigrant Defense Project (2010), provides even clearer guidance. Its list of CIMTs includes "[c]rimes in which bodily harm is caused or threatened by an intentional act. . . ." Ortiz-Mondragon's conviction for substantial battery with a domestic abuse enhancer unquestionably meets these requirements. As noted above, substantial battery is defined as "causing] substantial bodily harm to another by an act done with intent to cause bodily harm to that person or another." Wis. Stat. § 940.19(2).
¶ 103. By focusing on the difficulty of defining "crimes of moral turpitude" and the different approaches the circuit courts take in determining whether a crime is a CIMT, the majority hides the fact that a conviction for substantial battery with a domestic abuse enhancer qualifies as a CIMT in the Seventh Circuit. Whether by reading the plain language of the domestic abuse subsection of the statute or by following clear Seventh Circuit precedent, defense counsel should have discovered the immigration consequences of Ortiz-Mondragon's plea. It was clear the plea would render him deportable. Thus, "the duty to give correct advice is equally clear." Padilla, 559 U.S. at 368. Defense counsel was obligated to provide the advice that was available. Id., 371.
¶ 104. As explained above, the United States Supreme Court has instructed, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. In criminal representation, this "entails certain basic duties," including the "duty to make *59 reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 688, 691. "[A]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland." Hinton v. Alabama, 134 S. Ct. 1081, 1089 (2014).
¶ 105. The majority conducts no inquiry into whether defense counsel's research was reasonable under professional norms, or whether defense counsel was ignorant on a fundamental point of law (i.e. the immigration consequences of a plea), nor could it. Without a Machner hearing the record is silent in this respect. Just as the record fails to show what warnings defense counsel provided, it also fails to show that he did adequate research into the immigration issue.
Ill
¶ 106. In contrast to the majority, I would remand this case for a Machner hearing. Such hearings are required unless the motion claiming ineffectiveness "presents only conclusory allegations," "fails to allege sufficient facts to raise a question of fact," or "if the record conclusively demonstrates that the defendant is not entitled to relief." Roberson, 292 Wis. 2d 280, ¶ 43.
| 107. Ortiz-Mondragon's motion is quite detailed and alleges sufficient facts which, if true, show that he is entitled to relief. It details that his plea rendered him ineligible for cancellation of his removal:
Mr. Ortiz-Mondragon pleaded no contest to substantial battery, domestic abuse, contrary to Wis. Stat. § 940.19(2). This is a crime involving moral turpitude.
*60 The maximum sentence for this offense is 3.5 years of imprisonment. Because the maximum period of confinement exceeds one year, Mr. Ortiz-Mondragon's conviction rendered him ineligible for cancellation of removal.
It also explains that the plea prevents OrtizMondragon from returning to the United States:
[Bjecause of his convictions, Mr. Ortiz-Mondragon is permanently excluded from legally re-entering the United States. An individual applying for admission to the United States cannot have been convicted for a crime involving moral turpitude. INA § 212(a)(2)(A)(i)(I). The only exception is when the conviction involves a crime for which the maximum punishment is less than one year, and the actual sentence of the court does not exceed six months.
¶ 108. Further, the motion alleges that defense counsel was deficient for failing to advise him of these consequences: "[Ortiz-Mondragon] was not properly advised of the adverse immigration consequences of his plea." It explains what his attorney should have told him: "counsel's advice to Mr. Ortiz-Mondragon should have been that accepting a plea agreement in which he would plead guilty or no contest to substantial battery-domestic abuse would result in automatic removal and permanent exclusion from the United States." It then claims that his attorney failed to provide this advice: "trial counsel failed to advise him of adverse immigration consequences of his plea, specifically that the convictions mandated removal and resulted in permanent exclusion from the country once removed."
¶ 109. Finally, the motion alleges that this deficient performance prejudiced Ortiz-Mondragon: "Mr. Ortiz-Mondragon would have gone to trial instead of *61 pleading no contest had he known his convictions made him automatically deportable and permanently excluded." It explains that "[Ortiz-Mondragon] has already left the country and is now in Mexico. Due to his conviction, he was unable to apply for cancellation of his removal and he is now permanently excluded from re-entering the country." "[H]ad Mr. OrtizMondragon known and understood the consequences of a conviction for substantial battery, he would have attempted to negotiate a plea agreement that avoided the automatic and permanent consequences he now faces."
¶ 110. These facts, if true, show that OrtizMondragon's attorney was deficient because he did not meet the Padilla requirements. They also sufficiently allege that the deficiency prejudiced Ortiz-Mondragon. Thus, if true, the allegations establish a violation of Ortiz-Mondragon's Sixth Amendment rights, entitling him to relief.
¶ 111. Nothing in the record conclusively rebuts Ortiz-Mondragon's claim. It does not indicate what, if anything, defense counsel told Ortiz-Mondragon about the immigration consequences of his plea. It also fails to indicate the basis for that advice, whether it was grounded in research, and whether it was reasonable under prevailing professional norms.
¶ 112. None of the scenarios that would preclude a Machner hearing are present. Roberson, 292 Wis. 2d 280, ¶ 43 (Machner hearing not required if the motion "presents only conclusory allegations," "fails to allege sufficient facts to raise a question of fact," or "if the record conclusively demonstrates that the defendant is not entitled to relief."). Accordingly, a Machner hearing is required to determine the merits of OrtizMondragon's claim.
*62 IV
¶ 113. Under Padilla, attorneys representing noncitizens must research the relevant immigration consequences of a conviction and provide that information to their clients. These requirements are important protections to noncitizens.
¶ 114. Each of the majority's errors removes some of that protection. By ignoring statutory grounds rendering Ortiz-Mondragon deportable, the majority implicitly approves of attorneys not reading the governing immigration statutes, leaving the door open for uninformed, inaccurate advice. By determining that the immigration consequences of Ortiz-Mondragon's plea are unclear because the definition of CIMT is unclear, the majority reduces the number of situations in which attorneys must provide available immigration advice.
¶ 115. In contrast to the majority, I believe that Padilla's requirements have teeth. Had defense counsel researched the immigration consequences of OrtizMondragon's plea, he would have discovered that it rendered Ortiz-Mondragon deportable. Under Padilla, that means that defense counsel was required to convey that information to his client. Ortiz-Mondragon should have the opportunity to prove that such advice was not given and that he was prejudiced as a result. Therefore a remand is required and a Machner hearing is necessary.
¶ 116. For the reasons set forth above, I respectfully dissent.
¶ 117. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 In State v. Machner, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979), the court of appeals determined that when a defendant raises an ineffective assistance of counsel claim a hearing is necessary to obtain trial counsel's testimony. These hearings have become known as "Machner hearings."

 Section 16 of title 18 defines "crime of violence" as:
(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
18 U.S.C. § 16.

 Notably, although deportation for CIMTs is limited to CIMTs "committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j)) after the date of admission," 8 U.S.C. § 1227(a)(2)(A)(i)(I), a conviction for a crime of domestic violence is not so limited. 8 U.S.C. § 1227(a)(2)(E)(i) states that a crime of domestic violence occurring at "any time after admission" will render a noncitizen deportable.

 The majority's determination that defense counsel did adequate research is highly speculative. It refers to defense counsel's statement that "the information I get is secondhand," his statement that he had given Ortiz-Mondragon "paperwork," and that he handed the signed plea questionnaire and waiver of rights form, along with "some other papers," to the court. The majority contends that these facts are evidence that he did "some level of research." Majority op., ¶ 64. It then "infer [s] that the circuit court implicitly found that [defense counsel] performed an adequate amount of research." Id., ¶ 68. The flimsy details that the majority points to say nothing about what that research was or what the attorney knew. Without a Machner hearing, this information is unknowable.

 The DOJ list of immigration courts and their assigned geographic responsibilities is published pursuant to 8 C.F.R. § 1003.11.

 Illinois defines "family or household member" as including:
spouses, former spouses, parents, children, stepchildren, and other persons related by blood or by present or prior marriage, persons who share or formerly shared a common dwelling, persons who have or allegedly have a child in common, persons *55 who share or allegedly share a blood relationship through a child, persons who have or have had a dating or engagement relationship, persons with disabilities and their personal assistants, and caregivers as defined in Section 12-4.4a of this Code.
720 ILCS 5/12-0.1

 Although they are not binding, it is notable that other jurisdictions have determined that crimes comparable to substantial battery with a domestic abuse enhancer constitute CIMTs. See, e.g., Medina v. United States, 259 F.3d 220, 228 (4th Cir. 2001) ("we find it significant that Medina's crime was carried out against his former fiancée, Maria Bracho. The INS — which is statutorily authorized to administer the immigration laws and determine what constitutes a CIMT— has, in the past several years, taken steps to assert that crimes of assault upon victims that have a 'special relationship' with the assaulter may be a CIMT."); Toutounjian v. INS, 959 F. Supp. 598, 603 (W.D.N.Y. 1997) ("Sexual or physical abuse of women or children has been almost uniformly found to involve a crime of moral turpitude."); In re Tran, 21 I. & N. Dec. 291, 292-93 (BIA 1996) (concluding that acts of violence against someone in a special relationship with the assaulter is "different from [assault] between strangers or *57 acquaintances," and is a CIMT). The one case the majority cites as stating to the contrary, Morales-Garcia v. Holder, 567 F.3d 1058 (9th Cir. 2009), has not been followed outside of the Ninth Circuit.